UNITED STATES DITRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRAVIS McCONNELL**<br>**67 Jones Street**<br>**Lilly, PA 15938**<br>                    **Plaintiff**<br><br>vs.<br><br>**NORFOLK SOUTHERN**<br>                    **Defendant** | **CIVIL ACTION COMPLAINT**<br><br>**NO.: 3:22-cv-98**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

1. Plaintiff herein in Travis P. McConnell, a citizen and resident of the Pennsylvania residing therein at 67 Jones Street, Lilly, PA 15938.

2. The defendant is a corporation duly organized and existing under and by virtue of the laws of the State of Virginia and does business in the Western District of Pennsylvania.

3. This action arises under the Act of Congress, April 22, 1908, c. 149, 35 Stat. 65, and amendments thereto, U.S.C.A. Title 45, 51 et seq., and further amended by the Act of Congress, approved by the President of the United States on August 11, 1939, Chapter 685-First Session of the 76th Congress, known and cited as "The Federal Employers' Liability Act."

4. At the time and place hereinafter mentioned and for a long time prior thereto, the defendant, as a common carrier, operated trains carrying passengers, freight, express packages, baggage and foreign and domestic mail, in commerce, between the different states of the United States and its territories.

5. At the time and place hereinafter mentioned, the acts of omission and commission, causing the injuries to the plaintiff, were done by the defendant, its agents, servants,

workmen and/or employees, acting in the course and scope of their employment with and under the control of the defendant.

6. At the time and place hereinafter mentioned, the plaintiff and the defendant were engaged in interstate commerce between the different states of the United States and its territories.

7. All of the property, equipment and operations involved in the incident herein referred to were owned by and under the control of the defendant, its agents, servants, workmen and/or employees.

8. As a result of the incident herein referred to, plaintiff has suffered a loss and impairment of earnings and earning power and may suffer the same for an indefinite time in the future; has undergone great physical pain and mental anguish and may undergo the same for an indefinite time in the future; has been obliged to and will have to continue to expend large sums of money in the future in an effort to effect a cure of his aforesaid injuries; has been unable to attend to his usual duties and occupation and may be unable to attend to the same for an indefinite time in the future, all to his great detriment and loss.

9. The incident herein referred to was caused solely and exclusively by the negligence of the defendant, its agents, servants, workmen and/or employees, and was due in no manner whatsoever to any act or failure to act on the part of the plaintiff.

10. On or about February 24, 2020, between 10:30 and 11:30 a.m. and for some time prior thereto, plaintiff was employed by defendant Norfolk Southern as a locomotive engineer.

11. On the aforementioned date, and at the aforementioned time, even though it was not his normal job, plaintiff was ordered to start his locomotive.

12. On the aforementioned date, and at the aforementioned time, said locomotive was in the Altoona engine house.

13. During the process of "firing up" his locomotive, plaintiff began to feel his lips begin to tingle, his eyes begin to burn, and his felt nauseous.

14. When plaintiff began to experience these conditions, he contacted his conductor who came to the plaintiff's aid.

15. When plaintiff's conductor arrived, plaintiff was incoherent.

16. On the aforementioned date, and at the aforementioned time, plaintiff's conductor helped him out of the locomotive and contacted the yardmaster concerning the problem.

17. On the aforementioned date, and at the aforementioned time, after being taken out of the locomotive, an engine house employee named Mr. Hartline arrived and opened the doors and windows of the locomotive.

18. Despite plaintiff's medical problems, and his partial incoherence and inability to fully understand what was occurring and further despite the other employees smelling the fumes, the plaintiff was not offered any medical attention.

19. Instead of being offered medical attention, plaintiff was ordered to use another locomotive.

20. While operating the other locomotive the plaintiff continued to have physical symptoms and difficulty focusing, comprehending, and performing his job.

21. Although cognitively impaired because of the exposure to the fume, Plaintiff was concerned that he was unable to safely work.

22. Thereafter, plaintiff and his conductor returned the locomotive and went to the yard office and despite his condition, defendant failed to provide plaintiff with immediate emergency medical attention.

23. On the aforementioned date, and at the aforementioned time, road foreman, Meguess refused to permit the plaintiff to leave and obtain his own medical attention but ordered him to remain to complete paperwork and perform other administrative issues.

24. Plaintiff's conductor drove the plaintiff home because he was physically unable to drive himself.

25. The next morning, plaintiff was feeling worse and had developed breathing problems and arranged for medical treatment.

26. The aforementioned incident, where plaintiff was caused to inhale dangerous, toxic, and harmful fumes, was caused by the negligence of the defendant, its agents, servants, workman, and/or employees and was not caused by any conduct on the part of the plaintiff.

27. The negligence consisted of the following:
    a. Failing to inspect the subject locomotive;
    b. Failing to discover that the locomotive filled the locomotive cab with dangerous, toxic, and harmful fumes;
    c. Failure to maintain the locomotive;
    d. Failure to properly repair the locomotive;
    e. Requiring the plaintiff to perform a job with which he was not familiar;
    f. Requiring the plaintiff to use a locomotive that was unsafe;
    g. Requiring the plaintiff to use a locomotive even through dangerous, toxic, and harmful fumes from the locomotive entered and were entering the locomotive cab.
    h. Requiring the plaintiff to continue to work despite his impaired medical condition;
    i. Failing to provide the plaintiff with emergency medical treatment despite his impaired condition;
    j. Requiring the plaintiff to use a dangerous locomotive, even though dangerous, toxic, and harmful fumes were known by the defnedant to be entering its cab;
    j. Failing to warn plaintiff of the aforementioned conditions.

28.  The defendant is also liable to the plaintiff for its violation of the Federal Locomotive Inspect Act and federal regulations by requiring him to operate a locomotive that was unsafe, subjected him to personal injury, and was in violation of the law.

29.  The aforementioned accident was not caused by any conduct on the part of the plaintiff.

30.  As a result of the aforementioned accident, plaintiff sustained a serious, painful, permanent and personal injuries more particularly hereinafter set forth.

31.  As a result of the aforesaid incident, plaintiff sustained an injury to the pulmonary and respiratory systems; injury to the pulmonary system; reactive airway disease syndrome (RADS); gastroesophageal reflux syndrome; anxiety with depression; migraine syndrome. The full extent of plaintiff's injuries is not presently known.

Wherefore, plaintiff demands judgment against the defendant for a sum in excess of $150,000.00.

**COFFEY KAYE MYES & OLLEY**

BY:  /s/ Robert E. Myers
**ROBERT E. MYERS**
**Attorney for plaintiff**
Coffey Kaye Myers & Olley
Two Bala Plaza, Suite 718
Bala Cynwyd, PA 19004
(610) 668-9800